**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| TAJE DHATT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENVIVA INC., *et al* <br><br> Defendants. | Civil Action No.: 8:23-cv-02474-DLB |

**MEMORANDUM OF LAW IN SUPPORT OF THE POPPEL GROUP'S**
**MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

PROCEDURAL HISTORY ............................................................................................... 5

ARGUMENT ..................................................................................................................... 5

I.     The Poppel Group Is the Most Adequate Plaintiff and Should Be Appointed Lead
       Plaintiff ................................................................................................................. 5

       A.     The Lead Plaintiff Framework Under the PSLRA ................................... 5

       B.     The Poppel Group Has Satisfied the PSLRA's Procedural Requirements ............ 6

       C.     The Poppel Group Has the "Largest Financial Interest" in the Relief Sought By
              the Class ..................................................................................................... 7

       D.     The Poppel Group Satisfies the Requirements of Rule 23 ...................... 9

              1.     The Poppel Group's Claims Are Typical of the Class ................. 9

              2.     The Poppel Group Is an Adequate Representative ..................... 11

II.    The Poppel Group's Selection of Counsel Should Be Approved ..................... 13

CONCLUSION ................................................................................................................ 14

i

# TABLE OF AUTHORITIES

**Cases**

*Cohen v. U.S. Dist. Court for N. Dist. of California*,
  586 F.3d 703 (9th Cir. 2009) .................................................................................. 13

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................. 7

*Harper v. 2U, Inc.*,
  No. TDC-19-3455, 2020 U.S. Dist. LEXIS 267263 (D. Md. June 1, 2020) ........................... 13

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................... 13

*In re Mun. Mortg. & Equity, LLC*,
  No. MDL 08-MD-1961, 2008 U.S. Dist. LEXIS 128610 (D. Md. Aug. 27, 2008) .................. 7

*In re Olsten Corp. Securities Litigation*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................. 7

*Klugmann v. Am. Capital Ltd.*,
  No. PJM 09-5, 2009 U.S. Dist. LEXIS 71895 (D. Md. Aug. 12, 2009)..................................... 9

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997).............................. 7

*Ortmann v. Aurinia Pharms. Inc.*,
  No. GJH-22-1335, 2023 U.S. Dist. LEXIS 28337 (D. Md. Feb. 20, 2023) ......................... 9, 13

*Palm Tran, Inc. v. Emergent Biosolutions*, *Inc.*,
  No. PWG-21-955, 2021 U.S. Dist. LEXIS 244894 (D. Md. Dec. 23, 2021) .................. 6, 7, 12

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance
  Corp. I*,
  No. 2:09-cv-01713 (PKC) (WDW), ECF No. 230 (E.D.N.Y. Sept. 24, 2014) ....................... 14

*Poppel v. eFunds Corp.*,
  No. 03-cv-01915, ECF No. 97 (Apr. 14, 2006) ...................................................... 12

*Poptech, LP v. Stewardship Inv. Advisors, LLC*,
  No. 3:10-cv-967 (MRK), 2010 U.S. Dist. LEXIS 114711 (D. Conn. Oct. 28, 2010) .............. 11

*Poptech, LP v. Stewardship Inv. Advisors, LLC*,
  No. 3:10-cv-967 (SRU), ECF Nos. 228-230 (D. Conn. July 8, 2014)..................................... 12

*Tchatchou v. India Globalization Capital, Inc.*,
  No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329 (D. Md. Feb. 28, 2019) .................. 11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2007) ....................................................................................... 10

**Statutes**
15 U.S.C. § 78u-4(a)(3) ............................................................................................ passim

15 U.S.C. § 78u-4(e) ...................................................................................................... 8

**Other Authorities**
H.R. Conf. Rep. No. 104-369 (1995) ............................................................................ 11

S. Rep. No. 104-98 (1995) ............................................................................................ 11

iii

## PRELIMINARY STATEMENT

This federal securities class action is brought on behalf of a proposed "Class" of all persons other than Defendants who purchased or otherwise acquired Defendant Enviva, Inc. ("Enviva" or the "Company") common stock on a U.S. open market during the class period November 3, 2022 through May 3, 2023, both dates inclusive (the "Class Period"). ¶¶ 1, 64.[1] The Complaint alleges that during the Class Period, Defendants Enviva and its senior officers made materially false and misleading statements concerning Enviva's financial condition, operational improvements, and the stability of Enviva's dividend, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

Harvey L. Poppel, Poptech, LP, Dr. Clinton Scott Poppel, and Poptech GC, LLC[2] (the "Poppel Group") are members of the Class and respectfully seek appointment jointly as Lead Plaintiff in this action pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 et seq. ("PSLRA"). The Poppel Group meets all the requirements of the PSLRA for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Poppel Group timely filed this motion. The Poppel Group believes it has the largest financial interest in the relief sought by the Class. In total, the Poppel Group purchased 31,971 shares of Enviva common stock during the Class Period at a cost of $1,333,375, sold 2,000 shares of Enviva common stock during the Class Period for proceeds of $92,000, and held 29,971 shares of Enviva common stock at the end of the Class

---

[1] References to "¶_" refer to the paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws filed in this action on September 12, 2023 ("Complaint," ECF No. 1).

[2] Harvey Poppel is a member of Poptech LLC, the sole General Partner of Poptech, LP, and has authority to act on behalf of Poptech, LP. Clinton Poppel is Harvey Poppel's son and is the non-member manager of Poptech GC, LLC. Clinton Poppel has authority to act on behalf of Poptech GC, LLC. Clinton Poppel is also moving for lead plaintiff to recover losses sustained by his wife and sons, who have executed assignments of claim to Clinton Poppel.

Period on May 3, 2023, when the truth concerning Enviva's financial condition was revealed to investors. The Poppel Group suffered out-of-pocket losses of approximately $917,982 attributable to the alleged fraud. *See* Section I.C, below, and Declaration of Adam Savett in Support of the Poppel Group's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, dated November 13, 2023 ("Savett Decl."), Ex. 3 (Estimated Loss Calculation). The Poppel Group also satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23. *See* Section I.D, below.

The Poppel Group further requests that the Court approve its selection of Wolf Popper LLP to serve as lead counsel for the Class and The Kaplan Law Firm to serve as local liaison counsel for the Class. Wolf Popper is a nationally recognized law firm with a consistent record of achieving substantial recoveries for the benefit of injured investor classes, and has the expertise and resources necessary to provide high quality legal representation to the Class. The Kaplan Law Firm represents clients in litigation before state and federal trial and appellate courts. The Firm's principal attorney, Matthew B. Kaplan, has years of experience representing clients in a wide array of judicial proceedings, including in collective and class actions. *See* Section II, below.

## FACTUAL BACKGROUND

Enviva is a company that produces wood pellets for sale in the United Kingdom, Europe and Japan through long-term, off-take contracts. ¶ 27. Enviva is incorporated under the laws of Delaware and is headquartered in Bethesda, Maryland. ¶ 18.

The Complaint alleges that throughout the Class Period, Defendants repeatedly made materially false and misleading statements and failed to disclose material information about the financial condition of the Enviva, including its EBITDA and net losses, liquidity position, capital allocations, operation costs, productivity and the impact of these metrics on the Company's ability to continue paying dividends in 2023.

For example, on November 2, 2022, after market hours, the Company issued a press release and filed its Form 8-K with the SEC reporting its third quarter results and issued its full-year 2023 guidance. ¶ 32. In the press release, the Company issued adjusted EBIDTA guidance of $305 million to $335 million which Defendant Even (Enviva's CFO) stated would "cover [their] current, stable dividend of $3.62 per share at 1.1 times, at the midpoint of this range." *Id*. Defendant Meth (then Enviva's CCO and President) similarly stated that the Company was experiencing "[p]roductivity improvement" and "capacity expansions" that "combined with" the Company's "improving supply chain conditions and the constructive pricing environment," would "drive incremental margin and cash flow." *Id.* Defendants attributed the downward shift of roughly $3 million of adjusted EBITDA for the third quarter solely to delays caused by a hurricane but failed to disclose that the Company faced additional, more substantial challenges that affected its financial condition. *Id.* According to the press release, the Company expected billions in revenue from its existing contracts. ¶ 33. During an earnings call the next day—November 3, 2022—Defendant Keppler (then Enviva's CEO) stated that the Company was "really starting to hit [its] stride" and reiterated the high forecast for the adjusted EBITDA. ¶ 34. Keppler also informed investors that Enviva's plans to expand its plant operations would make Enviva "well positioned for robust cash flow growth even in an environment with potential recessionary pressures." ¶ 35.

Defendants reiterated these materially false and misleading statements again in subsequent earnings calls, press releases and SEC filings. On March 1, 2023, the Company issued a press release on its fourth quarter results for 2022, which reaffirmed its overall 2023 guidance. ¶ 38. Enviva also represented that it began 2023 with capital funds that were sufficient to support capital expenditures of approximately $384 million. ¶ 39. Also on March 1, 2023, Defendant Meth (then Enviva's CEO) repeated that investors should expect an adjusted EBITDA between $305 million

3

to $335 million for FY 2023 and even that the Company's EBIDTA could "double" over the ensuing four years. ¶ 40. Meth further stated that the Company would generate operating cash flow that "will not only cover our dividend that we've guided to but in fact exceed that dividend." ¶ 41. Finally, with respect to company operations, Meth represented that production costs were trending lower and that the Company had delivered "record-breaking" output. ¶ 42.

On April 3, 2023, Enviva hosted an Investor Day Presentation, in which the Company stated that it had a "stable and secure dividend," "increasing cash flow stability" (with a forecasted liquidity of ~$400 million at the end of 2023, up ~$10 million since the March 2023 presentation) and "conservative leverage." ¶ 50. The Company also reaffirmed projected FY 2023 EBITDA between $305-$355 million, substantial production volumes and decreasing costs. *Id.*

Only a month later, on May 3, 2023, Enviva announced its first quarter 2023 financial results and unexpectedly revised down its 2023 guidance while eliminating the quarterly dividend entirely. ¶ 52. Specifically, Enviva lowered its adjusted EBITDA projections to $200–$250 million, raised its net loss projection from $18–$48 million to $136–$186 and suspended the dividend payments for 2023. *Id.* In a press release issued the same day, Defendant Keppler (then Enviva's Executive Chairman) attributed the revised guidance to expected revenue that failed to materialize, higher production costs and lower output. ¶¶ 53–54. On May 4, 2023, Enviva held an earnings call on which Defendant Meth blamed these revisions on (a) customer mix impacting results; (b) unplanned repairs and maintenance expenses; (c) professional fees; and (d) shipments subject to deferred gross margin accounting. ¶ 55. Defendants had previously failed to inform investors of the potential impact of customer mix, which as of the May 4, 2023 earnings call was said to account for $16 million of the difference between actual results and expectations. *Id.* Instead, Defendant Meth had misrepresented on the March 1, 2023 earnings call that there was

4

"incredible momentum with our customers with a new set of customers in just the last few weeks, all at higher pricing than we have seen historically." *Id*.

In response to this news, on May 4, 2023, Enviva's stock price collapsed, falling $14.34 per share, or 67.2%, from $21.35 per share on May 3, 2023 to $7.01 per share on May 4, 2023 on exceptionally heavy volume of 15.6 million shares, more than 26 times Enviva's average daily trading volume during the Class Period. ¶¶ 11, 58.

## PROCEDURAL HISTORY

On September 12, 2023, the Complaint was filed in this Court on behalf of the Class. On September 13, 2023, Plaintiff Taje Dhatt, through his counsel, caused to be published via *Accesswire*, a national wire service, the PSLRA required press release announcing the pendency of this action, the claims asserted in this action, the purported class period alleged in this action, and that any member of the purported class may move this Court to serve as lead plaintiff in the action no later than November 13, 2023, the first business day that is 60 days after the date the Notice was published (the "PSLRA Notice"). A copy of the PLSRA Notice is attached to the Savett Declaration as Exhibit 1.

## ARGUMENT

I.    **The Poppel Group Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff**

A.    **The Lead Plaintiff Framework Under the PSLRA**

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that has either filed the complaint

or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see Palm Tran, Inc. v. Emergent Biosolutions*, *Inc.*, No. PWG-21-955, 2021 U.S. Dist. LEXIS 244894, at \*11 (D. Md. Dec. 23, 2021).

The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Poppel Group respectfully submits that it satisfies each requirement of the PSLRA and is the presumptive "most adequate plaintiff." The Poppel Group has complied with the PSLRA procedural requirements, believes it holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

## B.     The Poppel Group Has Satisfied the PSLRA's Procedural Requirements

The Poppel Group, which is a cohesive group with a pre-litigation relationship, and is composed of a father and son and related entities, timely filed the instant motion. Harvey Poppel, individually and on behalf of Poptech, LP, and Clinton Poppel, individually and on behalf of Poptech GC, LLC, have also submitted sworn Certifications attesting to their sophistication and willingness to serve as lead plaintiff for the Class and to provide testimony at deposition and trial, if necessary. *See* Savett Decl., Ex. 2 (PSLRA Certifications). The Poppel Group therefore satisfies the first element of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

**C.        The Poppel Group Has the "Largest Financial Interest" in the Relief Sought By the Class**

"The PSLRA itself does not define the proper way to determine which movant has the 'largest financial interest in the relief sought.'" *Emergent Biosolutions*, 2021 U.S. Dist. LEXIS 244894, at *11-12. Courts in this District and throughout the Country generally apply a four factor test first promulgated in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997), and later in *In re Olsten Corp. Securities Litigation*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (the "Lax Factors"), when assessing the financial interest of lead plaintiff movants:

> In the absence of a statutory directive, many courts have applied a four-factor test (the Lax factors): (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.

*Emergent Biosolutions*, 2021 U.S. Dist. LEXIS 244894, at *18 (citations omitted).

Courts also apply *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-48 (2005) and remove from a movant's financial interest any losses arising from securities bought and sold before the defendant's corrective disclosure (or otherwise not attributable to the corrective disclosure). *See In re Mun. Mortg. & Equity, LLC*, No. MDL 08-MD-1961, 2008 U.S. Dist. LEXIS 128610, at *17 (D. Md. Aug. 27, 2008) ("where it is clear from the face of the pleadings that most of [a lead plaintiff movant]'s losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at [the lead plaintiff stage]." (citation and quotation omitted)). In *Dura*, the Supreme Court held that a plaintiff in a private securities fraud action can recover only if the plaintiff adequately alleges and proves that the defendant's fraudulent conduct proximately caused the plaintiff's economic loss. *Dura*, 544 U.S. at 345-46.

The Poppel Group believes that it has the largest financial interest of any Class member seeking appointment as Lead Plaintiff. In total, during the Class Period, the Poppel Group purchased 31,971 shares of Enviva common stock for a cost of $1,333,375, sold 2,000 shares of Enviva common stock for proceeds of $92,000, retained 29,971 shares of Enviva common stock at the end of the Class Period (net shares purchased), expended $1,241,375 net funds on those retained shares, and suffered a total out-of-pocket loss of approximately $917,982 when its shares are valued at the average closing price of Enviva common stock over the 90-day period from May 4, 2023 to August 2, 2023 of $10.7902 per share.[3] *See* Savett Decl., Ex. 3 (Estimated Loss Calculation). Moreover, the Poppel Group held 29,971 shares of Enviva common stock purchased during the Class Period as of May 3, 2023 and suffered *Dura* damages on those shares of $14.34 per share, or an aggregate of $429,784. The financial interests of Harvey Poppel, Clinton Poppel, Clinton Poppel's family members Poptech, LP, and Poptech GC, LLC are set forth in Exhibit C to the Savett Declaration and are summarized below:

| Person/Entity | Shares Purchased | Net Shares Purchased | Net Funds Expended | Gain (Loss) | Dura Damages |
|---|---|---|---|---|---|
| Poptech, LP | 15,171 | 15,171 | $609,657 | ($445,959) | $217,552 |
| Harvey L. Poppel IRA | 7,000 | 7,000 | $299,246 | ($223,715) | $100,380 |
| Clinton S. Poppel and Helen M. Poppel Joint Account | 6,000 | 4,000 | $183,865 | ($140,704) | $57,360 |
| Poptech GC, LLC | 1,000 | 1,000 | $38,448 | ($27,658) | $14,340 |
| Clinton S. Poppel IRA | 1,000 | 1,000 | $38,218 | ($27,428) | $14,340 |
| Clinton S. Poppel Roth IRA | 1,000 | 1,000 | $38,189 | ($27,398) | $14,340 |
| Helen M. Poppel Roth IRA | 400 | 400 | $15,348 | ($11,032) | $5,736 |
| Alexander J. Poppel | 200 | 200 | $9,215 | ($7,057) | $2,868 |
| Winston O. Poppel | 200 | 200 | $9,190 | ($7,032) | $2,868 |

---

[3] The PSLRA provides that damages shall not exceed the difference between the purchase price of a security and the average closing price of that security during the 90-day period following the corrective disclosure, or if the security is sold during that 90-day period, the average closing price through the date of sale. 15 U.S.C. § 78u-4(e). The Poppel Group did not sell any Enviva common stock during the 90-day period from May 4, 2023 to August 2, 2023.

Further, the Poppel Group is a cohesive group of investors with a pre-existing relationship independent of this lawsuit. It is not a group cobbled together for the purpose of aggregating independent losses. The Poppel Group's losses therefore should be considered together when assessing its financial interest.

Accordingly, the Poppel Group satisfies the second element of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**D.    The Poppel Group Satisfies the Requirements of Rule 23**

In deciding a motion for appointment as lead plaintiff under the PSLRA, "the court need only determine (1) whether the movant's claims or defenses are typical of the class's claims or defense [(typicality)], and (2) whether the movant will fairly and adequately protect the interests of the class [(adequacy)]." *Ortmann v. Aurinia Pharms. Inc.*, No. GJH-22-1335, 2023 U.S. Dist. LEXIS 28337, at *8 (D. Md. Feb. 20, 2023). "The proper inquiry at this stage is simply whether the movant has made a prima facie showing of typicality and adequacy." *Id.*

**1.    The Poppel Group's Claims Are Typical of the Class**

The typicality requirement is satisfied "when the representative plaintiff suffers the same injuries as the class and when the claims are based on the same legal theory." *Klugmann v. Am. Capital Ltd.*, No. PJM 09-5, 2009 U.S. Dist. LEXIS 71895, at *14 (D. Md. Aug. 12, 2009). The Poppel Group's claims are typical of those of the purported Class. The Poppel Group purchased Enviva common stock during the Class Period, at prices alleged to be artificially inflated as a result of the Defendants' alleged materially false and misleading statements concerning Enviva's financial condition and the stability of Enviva's dividend. The Poppel Group suffered damages when the truth was revealed, and possesses claims against Enviva and the other Defendants under the federal securities laws. Because the Poppel Group's claims arise from the same events and course of conduct as the Class claims, it satisfies the typicality requirement of Rule 23(a)(3).

Harvey Poppel is proceeding on his own behalf and on behalf of Poptech, LP. He is a member of Poptech LLC, the sole General Partner of Poptech, LP, and has authority to act on behalf of Poptech, LP. Clinton Poppel is proceeding on his own behalf and on behalf of Poptech GC, LLC. He is the non-member manager of, and has authority to act on behalf of, Poptech GC, LLC. Clinton Poppel's sons Alexander Poppel, Lucas Poppel, and Winston Poppel, are the sole owners of Poptech GC, LLC, and have assigned Poptech GC, LLC's claims related to the purchase of Enviva securities to Clinton Poppel. Alexander Poppel, Winston Poppel, and Helen Poppel (Clinton Poppel's wife), have also assigned their individual claims or claims in joint accounts related to the purchase of Enviva securities to Clinton Poppel. *See* Savett Decl., Ex. 2. Clinton Poppel's family members assigned "all rights, title, and interest of the Assignor in any and all claims, demands and causes of action of any kind whatsoever which the Assignor has or may have arising from violations under the federal securities laws of the United States of America, other applicable statutes, and common law doctrines, including any and all fraud and other tort claims, in connection with the purchase, acquisition, and/or sale of the publicly traded securities of Enviva," and appointed Harvey and Clinton Poppel "as the Assignor's true and lawful attorney-in-fact for the purpose of exercising all powers relating to such causes of action," including taking legal action and moving for appointment as lead plaintiff. Savett Decl., Ex. 2. This assignment of claim is valid and provides Clinton Poppel with standing to assert securities fraud claims against the Defendants on behalf of his family members and, to the extent necessary in the event his individual authority as non-member manager of Poptech GC, LLC is questioned, Poptech GC, LLC. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108-09 (2d Cir. 2007). All members of the Poppel Group, Alexander Poppel, Winston Poppel, and Helen Poppel (in a joint account with Clinton Poppel), purchased Enviva securities at prices artificially

10

inflated as a result of Defendants' misrepresentations or omissions, and were damaged upon the disclosure of the truth regarding those misrepresentations or omissions. Clinton Poppel stand in the shoes of the assignors and their claims are based on the same legal theory, and arise from the same events and course of conduct as the class claims, and thus Clinton Poppel satisfies the typicality requirement of Rule 23(a)(3) with respect to the assigned claims.

### 2.    The Poppel Group Is an Adequate Representative

The adequacy inquiry asks whether the movant "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *16 (D. Md. Feb. 28, 2019). The Poppel Group is an adequate representative. The Poppel Group claims are not antagonistic or in conflict with those of the Class. The Poppel Group is not subject to any unique defenses. Further, the Poppel Group's $917,982 loss and $429,784 in *Dura* damages means it has sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, whose interests align directly with its own. As described below, the Poppel Group has retained Wolf Popper to act as lead counsel, and Wolf Popper is experienced in securities class action litigation and well qualified to represent the Class in this action.

Harvey Poppel is a sophisticated investor, and Poptech, LP is an institutional investor, the type of investor that Congress intended to lead securities class actions. *See* Savett Decl., Ex. 4 (Joint Declaration) ¶¶ 2-3; H.R. Conf. Rep. No. 104-369 at *34 (1995); S. Rep. No. 104-98 at *6 (1995). In addition, Harvey Poppel and Poptech, LP have been found to be adequate and served as representatives of investor classes in prior litigations. *See Poptech, LP v. Stewardship Inv. Advisors, LLC*, No. 3:10-cv-967 (MRK), 2010 U.S. Dist. LEXIS 114711 (D. Conn. Oct. 28, 2010) (appointing Poptech, LP as lead plaintiff under the PSLRA); *Poptech, LP v. Stewardship Inv.*

11

*Advisors, LLC*, No. 3:10-cv-967 (SRU), ECF Nos. 228-230 (D. Conn. July 8, 2014) (orders granting final class certification and final approval of settlement for various consideration in a range of $3.25 million to $6.5 million); *Poppel v. eFunds Corp.*, No. 03-cv-01915, ECF No. 97 (Apr. 14, 2006) (order granting final class certification and final approval of settlement of $2.55 million for a class of investors).

Further, the PSLRA expressly provides that the most adequate plaintiff may be a "person or group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Poppel Group is a cohesive group with a pre-existing relationship. Harvey Poppel is Clinton Poppel's father. Harvey Poppel and Clinton Poppel are moving for lead plaintiff to recover losses they sustained in their own investment accounts, and the accounts of Poptech, LP and Poptech GC, LLC, entities for which they are members or otherwise have authority to institute suit. Clinton Poppel is also moving for lead plaintiff through assignments of claims that he received from his three sons (individually and as the only members of Poptech GC, LLC), and his wife. The Poppel Group was not formed by counsel for the purpose of aggregating losses of unrelated investors in a lead plaintiff motion. Because they are related to one another, this Court need not conduct an examination into whether they will be able to function cohesively as a group when representing the Class as lead plaintiff together. *See Emergent Biosolutions*, 2021 U.S. Dist. LEXIS 244894, at *16 ("Because NS-FL Group is a group of unrelated investors, I must consider whether it will be able to function cohesively to monitor counsel and make critical litigation decisions." (citation and quotation omitted)). In any event, Harvey Poppel and Clinton Poppel have submitted a joint declaration attesting to their willingness to serve as lead plaintiff on their own behalf and on behalf of Poptech, LP and Poptech GC, LLC, respectively, their willingness to work together, and how they will

12

communicate and jointly supervise counsel. Savett Decl., Ex. 4 (Joint Declaration). As such, the Poppel Group is entitled to the presumption of adequacy.

Accordingly, the Poppel Group satisfies the third element of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

## II.    The Poppel Group's Selection of Counsel Should Be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). "The court has an obligation to assure that Lead Plaintiff's choice of representation best suits the needs of the class. Whether the court accepts the lead plaintiff's choice of counsel is a matter of discretion." *Aurinia Pharms.*, 2023 U.S. Dist. LEXIS 28337, at *12. "'[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.'" *Harper v. 2U, Inc.*, No. TDC-19-3455, 2020 U.S. Dist. LEXIS 267263, at *7 (D. Md. June 1, 2020) (quoting *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001))).

The Poppel Group has selected Wolf Popper to serve as lead counsel and The Kaplan Law Firm as local liaison counsel on behalf of the Class. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations on behalf of investors, including through trial and judgment, as detailed in its attached resume. *See* Savett Decl., Ex. 5 (Wolf Popper Resume). As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, Wolf Popper has the skill and knowledge to prosecute this action effectively and expeditiously.

For example, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I,* No. 2:09-cv-01713 (PKC) (WDW) (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as Lead Plaintiff and

13

recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Hon. Pamela K. Chen of the U.S. District Court for the Eastern District of New York entered an order approving the settlement. Judge Chen found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." Transcript of Proceedings Held on July 24, 2014 at 19:14- 17, 22:5-18, *J.P. Morgan Acceptance Corp. I,* ECF No. 230 (E.D.N.Y. Sept. 24, 2014).

The Kaplan Law Firm represents clients in litigation before state and federal trial and appellate courts. The Firm's principal attorney, Matthew B. Kaplan, has years of experience representing clients in a wide array of judicial proceedings, including in collective and class actions.. *See* Savett Decl., Ex. 6 (Matthew B. Kaplan Resume).

The Court may be assured that by approving the Poppel Group's selection of Wolf Popper as lead counsel and The Kaplan Law Firm as local liaison counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Poppel Group respectfully requests the Court to issue an Order (1) appointing the Poppel Group as Lead Plaintiff; (2) approving Wolf Popper as Lead Counsel and The Kaplan Law Firm as Local Liaison Counsel; and (3) granting such other relief as is deemed just and proper.

DATED: November 13, 2023

14

**THE KAPLAN LAW FIRM**

/s/      *Matthew B. Kaplan*
Matthew B. Kaplan, Bar No. 18724
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
Tel: (703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

*Counsel for Movant the Poppel Group and*
*Proposed Local Liaison Counsel for the Class*

**WOLF POPPER LLP**
Robert C. Finkel (*pro hac vice* motion to be filed)
Joshua Ruthizer (*pro hac vice* motion to be filed)
Adam Savett (*pro hac vice* motion to be filed)
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com
Email: asavett@wolfpopper.com

*Counsel for Movant the Poppel Group and*
*Proposed Lead Counsel for the Class*

15