UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| TAJE DHATT, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>ENVIVA INC., *et al.*,<br><br>            Defendants. | Civil Case No. 23-cv-2474 DLB |

**Memorandum of Law in Support of the Friedman-Rich Group's Motion
for Appointment as Lead Plaintiff and for Approval of Selection
of Lead Counsel and Liaison Counsel**

ICE MILLER LLP
Kevin G. Hroblak
(Maryland Bar No. 26180)
Michael P. Collins, Jr.
(Maryland Bar No. 20805)
100 Light Street, Suite 1350
Baltimore, Maryland 21202
Telephone:  (410) 951-5874
Email:        kevin.hroblak@icemiller.com
                  michael.collins@icemiller.com

*Counsel for the Friedman-Rich Group and
Proposed Liaison Counsel*

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
(*pro hac vice* to be submitted)
Albert Y. Chang
(*pro hac vice* to be submitted)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Email:        fbottini@bottinilaw.com
                  achang@bottinilaw.com

*Counsel for the Friedman-Rich Group
and Proposed Lead Counsel for the Class*

**Table of Contents**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

I.      The Complaint .................................................................................................... 2

II.     The Friedman-Rich Group's Motion ................................................................. 3

ARGUMENT ..................................................................................................................... 4

I.      The Friedman-Rich Group Should Be Appointed as Lead Plaintiff ....................... 4

        A.      The Friedman-Rich Group's Motion Is Timely ........................................... 4

        B.      The Friedman-Rich Group Has Suffered the Largest Amount of
                Recoverable Losses ................................................................................ 4

                1.      The Friedman-Rich Group Suffered Substantial Losses
                        as a Result of Their Purchases of Enviva Stock ............................... 5

                2.      As Demonstrated in the Joint Declaration, the Friedman-Rich
                        Group Has the Ability to Function Cohesively and to
                        Prosecute This Action Vigorously ...................................................... 6

        C.      The Friedman-Rich Group Has Made a *Prima Facie* Showing
                of Typicality and Adequacy Under Rule 23(a) ........................................... 7

                1.      The Friedman-Rich Group's Claims Are Typical ............................. 7

                2.      The Friedman-Rich Group Is an Adequate Representative
                        of the Class ................................................................................... 9

II.     The Court Should Approve the Selection of Bottini & Bottini, Inc. as Lead
        Counsel and Ice Miller LLP as Liaison Counsel Based on the
        Firms' Experience and Qualifications ................................................................. 10

CONCLUSION ................................................................................................................. 11

i

**PRELIMINARY STATEMENT**

In compliance with Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Edward Friedman and Henry Rich (the "Friedman-Rich Group") seek this Court's approval of two case-management protocols: (1) appointing a lead plaintiff; and (2) approving the lead plaintiff's selection of lead counsel.  Specifically, the PSLRA requires that the Court appoint as lead plaintiff the "most adequate plaintiff" to represent the class.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The "most adequate plaintiff" is the one who has "the largest financial interest in the relief sought by the class" and "otherwise satisf[ies] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.*

Here, the Friedman-Rich Group should be appointed as lead plaintiff because:

- to the best of its knowledge, the group has the largest financial interest in the relief sought by the class based on its members' purchases of 65,244 shares of Enviva Inc. ("Enviva" or the "Company") common stock and suffered losses of approximately $1,449,594.89 as a result of defendants' misconduct (*see* Declaration of Albert Y. Chang ("Chang Decl.") Ex. C); and

- the group members' claims are typical of the claims of the class, and they will fairly and adequately represent the interests of the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The Court should approve the Friedman-Rich Group's selection of Bottini & Bottini, Inc. as lead counsel for plaintiffs and the class because the firm is highly experienced in complex securities class actions, and has the ability and resources to prosecute this action.  *See* 15 U.S.C. § 74u-4(a)(3)(B)(v).

Accordingly, the Court should grant the Friedman-Rich Group's motion.

**FACTUAL BACKGROUND**

**I.      The Complaint**

This is a class action brought under the Exchange Act on behalf of all persons (the "Class") who purchased or otherwise acquired publicly traded Enviva common stock between November 3, 2022 and May 3, 2023 (the "Class Period").  Compl. ¶ 1.  A Maryland-based company, Enviva develops, constructs, acquires, and operates fully contracted wood pellet production plants.  *Id.* ¶ 2.  These plants take wood fiber and aggregate and process it into dry, densified, and uniform pellets that can be effectively stored and transported around the world.  *Id.*  Self-described as a "growth-oriented company," Enviva purports to use its wood pellets to displace coal and other fossil fuels to generate power and heat, as part of its efforts to accelerate the energy transition away from conventional energy sources.  *Id.*

From November 3, 2022 through April 3, 2023 — only one month before the end of the Class Period — Enviva and its senior officers (Defendants John K. Keppler, Thomas Meth, Shai S. Even, and Michael A. Johnson) touted that Enviva was on track to achieve, for fiscal year 2023, EBITDA of $305–$335 million and a yearly dividend payout of $3.62 per share.  *Id.* ¶ 3.  They also represented that Enviva's liquidity was "strong" going into 2023, and that its leverage ratio could be maintained at a "conservative" 3.6x-3.7x, even after taking into account the proposed dividend payouts.  *Id.*

But these statements were premised on misrepresentations of existing fact. Among other things, Keppler told the participants on a November 3, 2022 earnings call, "[a]s we look into 2023, we are really starting to hit our stride as a corporation."  *Id.*  He also added that the Company was experiencing "the continued operational improvements ... across our fully contracted asset base," and that "productivity and the benefit of the

multi-plant expansions drives increased volume and improved fixed cost absorption." *Id.* ¶ 4.  Still, defendants continued to make statements promoting the financial stability of Enviva on a March 1, 2023 earnings call and during an April 3, 2023 "Investor Day" presentation.  *Id.* ¶¶ 5–6.

These statements, however, violate Section 10(b) of the Exchange Act and Rule 10b-5, because they were materially false and misleading, or failed to disclose material information necessary to make such statements not misleading.  *Id.* ¶ 7.  On May 3, 2023, the truth behind the Company's financial condition was revealed when defendants, in a press release issued before the market opened, dramatically lowered their 2023 guidance downward and suspended Enviva's dividend payments going forward. Defendants now projected that Enviva's 2023 EBITDA would be substantially lower, in the range of $200–$250 million, net loss would be substantially higher, increasing to a range of $136–$186 million, and Enviva's $0.905 per share quarterly dividend was eliminated.  *Id.* ¶ 8.

The revelation of Enviva's true financial condition led its stock price to collapse $14.34 per share from $21.35 per share to $7.01 per share (down 67.2%).  *Id.* ¶ 11.

To recover the damages attributable to the inflation in Enviva's stock caused by defendants' materially false and misleading statements during the Class Period, the Class asserts two claims under the Exchange Act.  *Id.* ¶¶ 73–94.

## II.    The Friedman-Rich Group's Motion

On September 12, 2023, this action was commenced.  On the next day, a notice regarding the pendency of this action and the deadline to seek lead-plaintiff appointment was published.  *See* Chang Decl. Ex. A.  Within 60 days of this notice, Friedman and Rich now move for appointment as lead plaintiff and approval of their selection of lead counsel.

3

**ARGUMENT**

**I.    The Friedman-Rich Group Should Be Appointed as Lead Plaintiff**

The PSLRA provides a rebuttable presumption that the most adequate plaintiff in any private action alleging securities fraud is "the person or group of persons" that:

- "has either filed the complaint or made a motion in response to a notice";

- "has the largest financial interest in the relief sought by the class"; and

- "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As discussed below, the Friedman-Rich Group meets these requirements and should be appointed as lead plaintiff.

**A.    The Friedman-Rich Group's Motion Is Timely**

According to the September 13, 2023 notice, the 60-day period in which class members may move to be appointed lead plaintiff under Section 78u-4(a)(3)(A)(II) expires on November 13, 2023.  *See* Chang Decl. Ex. A at 1.  The Friedman-Rich Group is making this motion on November 13, 2023.  Thus, the group's motion is timely.

Accordingly, the Friedman-Rich Group is entitled to have its motion considered by the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

**B.    The Friedman-Rich Group Has Suffered the Largest Amount of Recoverable Losses**

The "lead plaintiff" is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  To identify the presumptive "most adequate plaintiff," the court must first determine which member or group of members of the class "has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-

4

4(a)(3)(B)(iii)(I)(bb).  This determination requires consideration of four factors: "(1) the number of shares purchase[d]; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Tchatchou v. India Globalization Capital, Inc.*, 2019 U.S. Dist. LEXIS 33329, at *11 (D. Md. Feb. 28, 2019) (citing 7 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 22:42 (5th ed. 2017) and *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011)).  The fourth factor — approximate losses suffered — is the most important factor.  *Id.*; *see also Montesano v. Eros Int'l PLC*, 2020 U.S. Dist. LEXIS 65909, at *8 (D.N.J. Apr. 14, 2020) (according "the largest financial loss … the greatest weight").

### 1.   The Friedman-Rich Group Suffered Substantial Losses as a Result of Their Purchases of Enviva Stock

As demonstrated in certifications of Friedman and Rich, the members of the Friedman-Rich Group collectively purchased 65,244 shares of Enviva stock during the Class Period and, as a result, suffered an aggregate loss in the amount of $1,449,594.89.  *See* Chang Decl. Ex. C at 1.  To the best of their knowledge, the members of the Friedman-Rich Group do not know of another class member who is seeking lead-plaintiff appointment and who has suffered a higher amount of losses.  Thus, the Friedman-Rich Group is the presumptive most adequate plaintiff.  *See, e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *11; *Montesano*, 2020 U.S. Dist. LEXIS 65909, at **8–9 (finding that the movant claiming the largest amount of loss "has the largest financial interest of the potential lead plaintiffs").

5

### 2. As Demonstrated in the Joint Declaration, the Friedman-Rich Group Has the Ability to Function Cohesively and to Prosecute This Action Vigorously

The PSLRA authorizes the Court to appoint a "group of persons" as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As observed by the Supreme Court, "[d]istrict courts often permit aggregation of plaintiffs into groups, so even a small shareholder could apply for lead-plaintiff status, hoping to join with other shareholders to create a unit with the largest financial interest." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018). Accordingly, courts in this District and beyond have allowed unrelated investors to form groups to be appointed as lead plaintiffs so long as they demonstrate the ability to function cohesively. *See, e.g., Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at **13–14; *Phuong Ho v. NQ Mobile, Inc.*, 2014 U.S. Dist. LEXIS 51623, at *21 (S.D.N.Y. Apr. 9, 2014); *In re Cendant Corp. Litig*, 264 F.3d 201, 269–70 (3d Cir. 2001) (affirming the district court's decision to appoint a group as lead plaintiff).

The Friedman-Rich Group demonstrates the requisite cohesion. As stated in their joint declaration, Friedman and Rich have made a conscious decision to represent the class as a group based on their belief that their common losses will best serve the class. Chang Decl. Ex. D ¶¶ 2–4. To facilitate their joint representation of the class, they have established a protocol to communicate with counsel and to manage this litigation. *Id.* ¶ 10. Both group members are experienced investors and business professionals. *Id.* ¶ 4. Both members of the Friedman-Rich Group are ready and willing to vigorously prosecute this action and actively monitor counsel in the course of this litigation. *Id.* ¶¶ 5–9. These facts compel the conclusion that the Friedman-Rich Group can function as a cohesive group to vigorously prosecute this action on behalf of the class. *See, e.g., Klugmann v. Am. Capital Ltd.*, 2009 U.S. Dist. LEXIS 71895, at *13 (D. Md. 2009) (approving a three-

member group because each member had submitted a declaration attesting to their ability to act as a cohesive group); *Phuong Ho*, 2014 U.S. Dist. LEXIS 51623, at **18–19 (the protocol "to manage the litigation" shows that the group "has a plan for efficient management of the action").[1]

### C.    The Friedman-Rich Group Has Made a *Prima Facie* Showing of Typicality and Adequacy Under Rule 23(a)

The PSLRA requires that lead plaintiffs, in addition to having the largest financial interest, must "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)(cc).  Rule 23(a) requires that:  (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a).  In deciding a lead plaintiff motion, courts limit their inquiries to the typicality and adequacy prongs of Rule 23(a).  *See, e.g.*, *Cendant*, 264 F.3d at 263 ("[t]he initial [Rule 23] inquiry ... should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy"); *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *18 (following *Cendant*); *Chamblee v. Terraform Power, Inc.*, 2016 U.S. Dist. LEXIS 98619, at **4–5 (D. Md. July 28, 2016) (same).

### 1.    The Friedman-Rich Group's Claims Are Typical

The typicality requirement of Rule 23(a)(3) is satisfied when the named plaintiffs have (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct, and (3) their claims are based on the same legal issues.  *See* FED. R.

---

[1] Should the Court be disinclined to appoint a group, the Court should appoint Friedman or Rich individually as lead plaintiff.

CIV. P. 23(a)(3); *see also Cendant*, 264 F.3d at 265 ("[courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based'"). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("similarity of legal theory may control even in the face of differences of fact"). Nor does typicality require that the proposed class representatives' claims be identical to those of other class members. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998). Thus, courts have repeatedly held that typicality is satisfied in securities class actions when the class representative, like all other class members, suffered damages as a result of purchasing the subject stock during the relevant time period at prices that were artificially inflated by defendants' alleged false and misleading statements. *See id*. at 311–12.

The Friedman-Rich Group's claims are typical of those of other class members. The Friedman-Rich Group purchased Enviva stock during the Class Period based on the false and misleading statements made by Defendants. *See* Chang Decl. Exs. B–C. Like other class members, Friedman and Rich suffered significant damages as a result of their purchases of Enviva stock. Chang Decl. Ex. C at 1. The Friedman-Rich Group's claims satisfy Rule 23(a)(3)'s typicality requirement because they "arise[] from the same course of events as those of the other potential class members and rel[y] on similar legal theories." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003) *see also Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *18 (same).

### 2.     The Friedman-Rich Group Is an Adequate Representative of the Class

Rule 23(a)(4)'s adequacy-of-representation requirement is satisfied when counsel for the class is competent, the representative's interests are not antagonistic to those of the absent class members, and it is unlikely that the action is collusive. *See, e.g.*, *Chamblee*, 2016 U.S. Dist. LEXIS 98619, at *5 (appointing lead plaintiffs that "demonstrated that they will 'fairly and adequately protect the interests of the class,' and 'ensure vigorous advocacy'"); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002) (same).

Here, the Friedman-Rich Group is an adequate representative of the class for two reasons.  First, the Friedman-Rich Group's interests are clearly aligned with the interests of the members of the class because, like other class members, the group purchased Enviva stock due to defendants' materially false and misleading statements.  *See* Chang Decl. Exs. 2–3.  There is no antagonism between the Friedman-Rich Group's interests and those of the putative class.  Second, the Friedman-Rich Group has taken significant steps that demonstrate the willingness and ability of its members to protect the interests of the class:  (1) the Friedman-Rich Group's members have executed sworn certifications detailing their Class Period transactions; (2) they have timely moved this Court for appointment as lead plaintiff; and (3) they have retained competent and experienced counsel to prosecute these claims.  As discussed below, the Friedman-Rich Group's proposed counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  *See* Chang Decl. Ex. D.  Thus, the Friedman-Rich Group satisfies Rule 23 for the purposes of this motion.  *Royal Ahold*, 219 F.R.D. at 351.

II.    **The Court Should Approve the Selection of Bottini & Bottini, Inc. as Lead Counsel and Ice Miller LLP as Liaison Counsel Based on the Firms' Experience and Qualifications**

The PSLRA provides that the lead plaintiff shall, subject to court approval, select and retain lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v).  A court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Friedman-Rich Group has selected the law firm of Bottini & Bottini, Inc. as lead counsel.  *See* Chang Decl. Ex. E.  The attorneys at Bottini & Bottini, Inc. have substantial experience in prosecuting securities class actions.  *See id*.  For example, the firm served as lead counsel for the class in a multi-billion-dollar action involving a feeder fund to Bernard L. Madoff's Ponzi scheme.[2]  The firm was one of the three law firms that led the prosecution of a securities-fraud class action under the federal securities laws against Alibaba Group Holding Limited.[3]  In addition, Ice Miller LLP, whose Baltimore office is home to numerous seasoned and respected litigators, will ably provide local support to lead counsel for the class.  *See* Chang Decl. Ex. F.  In light of counsel's in-depth experience and ability to serve the class's best interests, the Court should approve the Friedman-Rich Group's selection of Bottini & Bottini, Inc. as lead counsel and Ice Miller LLP as liaison counsel.  *See*, *e.g.*, *In re Microstrategy Sec. Litig*., 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) (approving "plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources").

---

[2] *In re Herald, Primeo, & Thema Funds Securities Litigation*, No. 09 Civ. 0289 (RMB) (S.D.N.Y.).

[3] *Chicago Laborers Pension Fund v. Alibaba Group Holding Ltd*., No. CIV535692 (Cal. Super. Ct. Cnty. of San Mateo).

10

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and issue the accompanying proposed order (1) appointing the Friedman-Rich Group as lead plaintiff; and (2) approving the group's selection of Bottini & Bottini, Inc. as lead counsel and Ice Miller LLP as liaison counsel.

Dated: November 13, 2023

Respectfully submitted,

ICE MILLER LLP
Kevin G. Hroblak
(Maryland Bar No. 26180)
Michael P. Collins, Jr.
(Maryland Bar No. 20805)

s/ Kevin G. Hroblak
Kevin G. Hroblak

100 Light Street, Suite 1350
Baltimore, Maryland 21202
Telephone: (410) 951-5874
Email:     kevin.hroblak@icemiller.com
           michael.collins@icemiller.com

*Counsel for the Friedman-Rich Group and Proposed Liaison Counsel*

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
(*pro hac vice* to be submitted)
Albert Y. Chang
(*pro hac vice* to be submitted)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Email:     fbottini@bottinilaw.com
           achang@bottinilaw.com

*Counsel for the Friedman-Rich Group and Proposed Lead Counsel for the Class*

11