UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| TAJE DHATT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ENVIVA INC., *et al.*,<br><br>Defendants. | Civil Case No. 23-cv-2474 DLB<br><br>**The Friedman-Rich Group's Preliminary Opposition to the Competing Motions for Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel and Liaison Counsel** |

Under Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), movants Edward Friedman and Henry Rich (together, the "Friedman-Rich Group") respectfully submit this preliminary opposition to the two competing motions (Dkt. Nos. 13 and 15), made by (1) Andrew Davis and (2) Harvey L. Poppel, Dr. Clinton Scott Poppel, Poptech, LP and Poptech GC, LLC (the "Poppel Group"), for appointment of lead plaintiff and approval of selection of lead counsel and liaison counsel. This opposition is preliminary because, as explained below, additional details of Davis's transactions in defendant Enviva Inc.'s stock are necessary before his estimated losses can be ascertained and, consequently, before the presumptive "most adequate plaintiff" can be identified under the PSLRA, 15 U.S.C. § 78u-4(a)(3). In light of the need for additional information, the Friedman-Rich Group requests limited discovery under § 78u-4(a)(3)(B)(iv) regarding Davis's purchases and sales of Enviva stock during the Class Period (between November 3, 2022 and May 3, 2023), as well as Davis's background as an investor. In support of this preliminary opposition, the Friedman-Rich Group states as follows:

1.      This is a securities-fraud class action against Enviva and its officers for violations of the Exchange Act.

2.      At the inception of all Exchange Act actions like this one, the PSLRA requires that the Court entertain motions (often competing ones) for appointment of a lead plaintiff and for approval of the lead plaintiff's selection of lead counsel.  Specifically, the PSLRA requires that the Court appoint as lead plaintiff the "most adequate plaintiff" — "the member or members of the purported plaintiff class" who is "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the one who has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

3.      To identify the presumptive "most adequate plaintiff," the Court must first determine which member or group of members of the class "has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  This determination requires consideration of four factors: "(1) the number of shares purchase[d]; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs."  *Tchatchou v. India Globalization Capital, Inc.*, 2019 U.S. Dist. LEXIS 33329, at *11 (D. Md. Feb. 28, 2019) (citing 7 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 22:42 (5th ed. 2017) and *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011)).  The fourth factor — approximate losses suffered — is the most important factor. *Id.*; *see also Montesano v. Eros Int'l PLC*, 2020 U.S. Dist. LEXIS 65909, at *8 (D.N.J. Apr. 14, 2020) (according "the largest financial loss … the greatest weight").

4.      Pending before the Court now are three competing motions (Dkt. Nos. 13, 15, 16), made by Davis, the Friedman-Rich Group, and the Poppel Group, seeking appointment of lead plaintiff and approval of the lead plaintiff's selection of lead counsel and liaison counsel.  The losses claimed by the competing movants are as follows:

| Movant | Shares Purchased | Losses Claimed |
|---|---|---|
| Davis | 199,566 | $3,242,428.53 |
| The Friedman-Rich Group | 65,244 | $1,449,594.89 |
| The Poppel Group | 31,971 | $917,982.00 |

5.      At first blush, Davis appears to be the presumptive "most adequate plaintiff" because his claimed losses are larger than the losses claimed by the Friedman-Rich Group and the Poppel Group.  But a review of Davis's PSLRA-mandated certification (Dkt. No. 15-5) reveals that his disclosure of his transactions in Enviva stock is inaccurate at best.

6.      Davis certifies that, on behalf of the Katherine J. Davis Irrevocable Trust, he purchased, *in a single transaction*, 196,925 shares of Enviva stock at approximately $24.99 per share on April 6, 2023, and that he sold the same number of shares, *also in a single transaction*, at approximately $9.00 per share on May 9, 2023.  *See* Dkt. No. 15-5 at 3.

7.      Davis's reported transactions are virtually impossible.  Based on the trading data reported by Yahoo! Finance, approximately 1,297,200 shares of Enviva stock were traded on April 6, 2023.  *See* Suppl. Chang Decl. ¶ 3.  Davis's reported April 6, 2023 purchase of 196,925 shares of Enviva stock constitutes over 15% of the overall trading on that day.  *Id.*  It is virtually impossible for Davis to purchase — *in a single transaction* and *at a single price* — over 15% of the entire daily trading volume of Enviva shares in the market.  By comparison, for example, the Friedman-Rich Group reports the purchases of

3,567 shares of Enviva stock on February 6, 2023 — constituting only 0.74% of the trading volume of that day (482,500) — *in 14 transactions at various prices.* *See* Dkt. No. 16-5 at 3–4; *see also* Suppl. Chang Decl. ¶ 4.

8.      If Davis's trading data are indeed inaccurate, the Court may disregard them. In *Tomaszewski v. Trevena, Inc.*, for example, the court ordered a lead-plaintiff movant to submit trade confirmations in order to ascertain whether there were errors in his claimed losses. *See* 383 F. Supp. 3d 409, 411 & n.5 (E.D. Pa. 2019). The movant's trade confirmations revealed that his PSLRA-mandated certification contained several errors, including inaccurate "number of trades and the price per share" and the use of "combined … trades and averaged … per-share prices" (instead of itemizing the actual trades and trading prices). *Id.* at 414. As a result of these errors, the movant overstated his claimed losses of over $550,000 by approximately $500. *Id.* The court held that these errors in the movant's sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he [would] fairly and adequately represent the best interests of the class." *Id.* As a result, the court in *Tomaszewski* disqualified the movant from consideration for appointment as lead plaintiff. *Id.*

9.      Indeed, courts have routinely denied lead-plaintiff motions on the basis of errors in PSLRA-mandated certifications because they raise questions regarding the movants' fitness to supervise a complex securities class action. *See, e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, 2020 U.S. Dist. LEXIS 15012, at **16–17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *Camp v. Qualcomm Inc.*, 2019 U.S. Dist. LEXIS 10269, at **8–10 (S.D. Cal. Jan. 22, 2019) (errors in transactions records and loss calculations prohibit a movant

from satisfying Rule 23's adequacy and typicality requirements); *Darwin v. Taylor*, 2012 U.S. Dist. LEXIS 152838, at **10–22 (D. Colo. Oct. 23, 2012) (disregarding the movant with the largest claimed losses because his trading data were inaccurate); *In re Vonage Initial Pub. Offering Sec. Litig.*, 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"). In the event that Davis is disqualified from consideration as lead plaintiff due to the deficiencies in his certification, the Friedman-Rich Group is the presumptive "most adequate plaintiff" because its losses ($1,449,594.89) are larger than those claimed by the Poppel Group. *See* Dkt. No. 16-6 at 2; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

10.     Davis's motion also fails to provide any details regarding his background as an investor, such as his investment experience, educational credentials, and employment history. *See, e.g.*, *Haideri v. Jumei Int'l Holding, Ltd.*, 2020 U.S. Dist. LEXIS 162510, at *12 (N.D. Cal. Sept. 4, 2020) (denying motion by movants who "provided no information about themselves"); *Camp*, 2019 U.S. Dist. LEXIS 10269, at *8 (denying motion where movant "failed to include any basic details about himself, including where he lives or who he is specifically in his motion").[1]

11.     In light of the deficiencies in Davis's trading data and background information, a reasonable basis exists for a finding that Davis is incapable of adequately representing the class. In such a situation, the PSLRA, § 78u-4(a)(3)(B)(iv), permits

---

[1] In contrast, for example, the Friedman-Rich Group has submitted a joint declaration attesting to the group members' educational background and investment experience. *See* Dkt. No. 16-7 ¶ 4 ("Edward Friedman is a retired real estate investor with over five decades of experience in investing in the stock market. An entrepreneur with a bachelor's degree from Harvard University and a master's degree from the University of Cambridge, Henry Rich has substantial experience in finance and investments.").

discovery, including deposition and written discovery, relating to whether Davis is the most adequate plaintiff.[2] *See, e.g., Applestein v. Medivation, Inc.,* 2010 U.S. Dist. LEXIS 98255, at \*\*14–16 (N.D. Cal. Sept. 17, 2010) (granting leave to conduct discovery).

12. Accordingly, the Friedman-Rich Group respectfully requests that the Court permit discovery, including deposition and written discovery, with respect to Davis's trading data and background as an investor. The Court should permit the Friedman-Rich Group 60 days to conduct such discovery and, upon completion of the discovery, allow the Friedman-Rich Group 14 days to submit further briefing on the competing motions for appointment of lead plaintiff and approval of the lead plaintiff's selection of lead counsel and liaison counsel.

Dated: November 27, 2023

Respectfully submitted,

ICE MILLER LLP
Kevin G. Hroblak
(Maryland Bar No. 26180)
Michael P. Collins, Jr.
(Maryland Bar No. 20805)

s/ Kevin G. Hroblak
Kevin G. Hroblak

100 Light Street, Suite 1350
Baltimore, Maryland 21202
Telephone: (410) 951-5874
Email:    kevin.hroblak@icemiller.com
          michael.collins@icemiller.com

*Counsel for the Friedman-Rich Group and Proposed Liaison Counsel*

---

[2] The text of 15 U.S.C. § 78u-4(a)(3)(B)(iv) reads:

(iv) Discovery. For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
(*pro hac vice* to be submitted)
Albert Y. Chang
(*pro hac vice* to be submitted)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Email:          fbottini@bottinilaw.com
                     achang@bottinilaw.com

*Counsel for the Friedman-Rich Group and*
*Proposed Lead Counsel for the Class*

### Certificate of Service

I hereby certify that on November 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated:  November 27, 2023

s/ Michael P. Collins, Jr.
Michael P. Collins, Jr.