**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| TAJE DHATT, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>     v.<br><br>ENVIVA INC., *et al.*,<br><br>                Defendants. | Case No. 8:23-cv-02474-MJM |

**ANDREW DAVIS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
<u>COUNSEL</u>**

Lead Plaintiff Movant Andrew Davis ("Davis"), on behalf of himself and as Trustee of the Katherine J. Davis Irrevocable Trust, submits this reply memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 15), and in response to the opposition to his motion filed by the Friedman-Rich Group (Dkt. No. 18, "FRG Opp.").[1]

## I.    PRELIMINARY STATEMENT

Davis is undisputedly the movant with—by far—the largest financial interest in this matter, and therefore the presumptively most adequate plaintiff to be appointed as lead plaintiff. In fact, Davis is more than merely "adequate" to represent the class: he is an entrepreneur who owns multiple businesses, has an MBA, and has years of investing experience.

The Friedman-Rich Group, however, argues that Davis should be disqualified as inadequate to represent the class. The group claims that Davis failed to provide background information about himself and that Davis' certification is inaccurate because Davis represents the trust's purchase and sale as two transactions, rather than many smaller transactions. The Friedman-Rich Group's attacks fail.

First, Davis did provide background information about himself in the memorandum in support of his motion. In fact, he provided the exact information that the Friedman-Rich Group claims is required. It appears that the Friedman-Rich Group simply failed to read Davis' motion closely before casting aspersions.

Second, the transaction information Davis submitted in his initial certification matches the transaction information in the monthly statements provided to Davis by his wealth manager

---

[1] All capitalized terms herein shall have the same definition as in Davis' opposition memorandum (Dkt. No. 19).

overseeing the account. However, upon further consultation with the wealth manager in preparation for this reply, Davis learned that the manager executed the purchase and sale by breaking them up into a series of smaller transactions. Davis' originally filed certification was accurate in that it listed the total amount of shares purchased, the date of the transactions and the average price of these transactions. Regardless, Davis submits an amended certification with this reply detailing the smaller blocks of transactions that comprise the transactions in the original certification.[2] *See* Declaration of Andrew Davis in Support of His Motion for Appointment as Lead Plaintiff and Approval of Counsel ("Davis Decl."), Ex. A. Courts consistently hold that harmless mistakes like this are not disqualifying.

As such, Friedman-Rich Group has failed to present the "proof" required to rebut the presumption that Davis is the most adequate plaintiff. As such, Davis' motion for appointment as lead plaintiff and approval of counsel should be granted.

## II.     DAVIS IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

Davis satisfies all three requirements to be the presumptively most adequate plaintiff because he filed a timely motion, has the largest financial interest, and made the required preliminary showing of his adequacy.

Both of the competing movants concede that Davis has the largest financial interest in the relief sought by the class. The Poppel Group stated that "it appears that Davis possesses the largest financial interest." Dkt. No. 17. The Friedman-Rich Group is the only movant that filed an opposition to Davis' motion for appointment as lead plaintiff. However, the Friedman-Rich Group concedes that "Davis appears to be the presumptive 'most adequate plaintiff' because his claimed

---

[2] The revision reduces Davis' $3.2 million loss by $512.58, confirming that the summary was not materially misleading.

losses are larger than the losses claimed by the Friedman-Rich Group and the Poppel Group." FRG

Opp. at 3. In fact, Davis' loss of $3,242,428 is more than double the Friedman-Rich Group's loss

of $1,412,199.

Since Davis also filed a timely motion and made the required preliminary showing of

adequacy and typicality, Davis satisfies all three requirements to establish that he is the

presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(aa)-(cc).

### III.    THE FRIEDMAN-RICH GROUP HAS NOT REBUTTED THE PRESUMPTION THAT DAVIS IS THE MOST ADEQUATE PLAINTIFF

The presumption that Davis is the most adequate plaintiff may be rebutted only upon

"proof" that Davis "will not fairly and adequately protect the interests of the class," or "is subject

to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. §

78u-4(a)(3)(B)(iii)(II). Importantly, the Friedman-Rich Group must provide "proof." Speculative

or conclusory assertions are insufficient. *See Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL

4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not

suffice."); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) (similar); *Armour v.

Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions [are]

insufficient to rebut the lead plaintiff presumption."). Proof demands "specific support in evidence

of the existence of an actual or potential conflict of interest." *Ortmann v. Aurinia Pharm. Inc.*, No.

22-cv-1335, 2023 WL 2139796, at *4 (D. Md. Feb. 20, 2023); *Vladimir v. Bioenvision, Inc.*, No.

07-cv-6416, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (similar); *Constance Sczesny Tr.

v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (similar). The Friedman-Rich Group has

failed to meet this high standard.

The Friedman-Rich Group argues that "Davis is incapable of adequately representing the class" because of purported "deficiencies in Davis's trading data and background information." FRG Opp. at 5. The Friedman-Rich Group's attacks fail.

### A.      Davis Provided Background Information

The Friedman-Rich Group claims that "Davis's motion . . . fails to provide any details regarding his background as an investor, such as his investment experience, educational credentials, and employment history." FRG Opp. at 5. This is plainly false—Davis provided exactly this information in his memorandum in support of his lead plaintiff motion under the subsection titled "Davis Is an Adequate Representative." *See* Dkt. No. 15-1 at 7-1 ("Davis is an entrepreneur who owns multiple businesses, has been managing his investments for many years, [and] has an MBA degree from Washington University."). Regardless, Davis has also reiterated his background information in his declaration, submitted with this motion. *See* Davis Decl. ¶ 2. As such, the Friedman-Rich Group's attack is completely baseless, and it has failed to rebut the presumption that Davis is the most adequate plaintiff.

### B.      Davis' Certification Does Not Render Him Inadequate

The Friedman-Rich Group also argues that Davis' certification (Dkt. No. 15-5) is "inaccurate at best" because "[i]t is virtually impossible" to purchased and/or sell 196,925 shares "in a single transaction." FRG Opp. at 3. The Friedman-Rich Group argues that Davis' presentation of his transactions "raise questions regarding [his] fitness to supervise a complex securities class action." *Id.* at 4.

As an initial matter, this is a strange attack to come from the Friedman-Rich Group, which itself omitted information regarding the types of call options and put options they bought and sold, as pointed out in Davis's opposition memorandum. *See* Dkt. No. 19 at 4 n.3; Dkt. No. 16-5 (failing to provide the expiration dates and strike prices). Setting that aside, the group's attack is meritless.

The transaction information Davis submitted in his certification matches exactly the information as presented in Davis' monthly account statements provided by Commerce Trust Company, his wealth manager.[3] *See* Davis Decl. ¶3. Davis put in a single request to Commerce Trust Company to purchase approximately $5,000,0000 worth of Enviva shares, which Commerce Trust Company executed, and then later requested that the shares be sold, which Commerce Trust Company also executed. *See id* ¶ 4. Davis' monthly statements provided by the Commerce Trust Company reflect a single purchase and a single sale at the prices and quantities listed in Davis' certification, which is what Davis relied on to present the transactions in his certification. *See id.* ¶ 3.[4]

However, in light of the Friedman-Rich Group's opposition memorandum, Davis inquired with Commerce Trust Company to clarify whether they executed the trades as a single transaction, as presented in the monthly statements, or as multiple transactions. In response, Commerce Trust Company provided records showing that they executed the trades in multiple smaller transactions. The Commerce Trust Company provided documentation showing that they purchased 196,925 shares on April 6, 2023, over 1,467 individual transactions, between 1:24 p.m. and 4:00 p.m. Eastern Time, at prices ranging from $24.51 to $25.17 per share. *See id* ¶ 5. The Commerce Trust Company also provided documentation showing that they sold 196,925 shares on May 9, 2023, over 991 transactions between 10:30 a.m. and 3:59 p.m. Eastern Time, at prices ranging from $8.33 to $9.25 per share. *See id* ¶ 5. In short, Davis' monthly statements and certification present an accurate summary of his purchases and sales, but do not break out each individual transaction. The complete set of transactions provided by Commerce Trust Company are presented in Davis'

---

[3] Commerce Trust Company is a private wealth management firm.

[4] The monthly account statements contain other sensitive financial information, not relevant to this action, but Davis is willing to present the statements, *in camera*, if the Court requests. *See id* ¶ 3.

amended certification, attached to his declaration filed herewith. *See id.* ¶ 6, Ex. A; *see also Blake v. Canoo Inc.*, No. 21-cv-2873, 2022 WL 599504, at \*6 (C.D. Cal. Feb. 18, 2022) ("Courts may consider amended certifications when competing movants challenge alleged defects in the original certification.").

Notably, this additional information provided by Commerce Trust Company does not meaningfully impact Davis' financial interest. Davis' gross shares purchased, net shares purchased, and net expenditure figures remain the same. Davis' loss figure is reduced by just $512.58, taking his loss from $3,242,428.53 to $3,241,915.95. The difference is not consequential. In fact, courts have appointed lead plaintiffs where the revision was consequential and the data in the original certification was affirmatively false, not just summarized like here. *See Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) (appointing a movant group where "[w]hen any alleged errors are rectified," the group's loss of $226,000 "still exceeds the $200,000 in losses proffered by the [competing movant]"); *Tai Jan Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 WL 3945879, at \*3 (N.D. Cal. Aug. 11, 2014) (appointing a lead plaintiff that submitted a corrected certification that "significantly reduce[d]" his loss "from $233,386 to $100,169" on the basis that "[e]ven with this downward revision" he "still has a greater financial interest" than the competing movant).

Moreover, Davis' good-faith reliance on the information provided in his monthly account statements does not render him inadequate because "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *Niederklein v. PCS EdventuresA.com, Inc.*, No. 1:10-cv-00479, 2011 WL 759553, at \*11 (D. Idaho Feb. 24, 2011); *accord Pampena v. Musk*, No. 22-cv-05937, 2023 WL 3082341, at \*3 (N.D. Cal. Apr. 24, 2023). The fact that Davis relied on records provided by his wealth manager further supports a

6

finding that the error was inadvertent and should not disqualify him. S*chueneman v. Arena Pharm., Inc.*, No. 10-cv-1959, 2011 WL 3475380, at \*6 (S.D. Cal. Aug. 8, 2011) (holding that movant's "oversight with respect to the wash-sale adjustments does not render his certification unreliable" where movant's "certification was based on his account statements that were prepared by his broker for tax purposes" and "there is no showing that he acted in bad faith").

Courts routinely appoint lead plaintiffs with errors in their original certifications that go beyond mere transaction summaries, which are accurate, but lack detail. *See In re SLM Corp. Sec. Litig.*, No. 08-cv-1029, 2012 WL 209095, at \*8 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties."); *Silverberg v. DryShips Inc.*, No. 17-cv-4547, 2018 WL 10669653, at \*3 (E.D.N.Y. Aug. 21, 2018) (same); *May v. Barclays PLC*, No. 23-cv-2583, 2023 WL 5950689, at \*16 (S.D.N.Y. Sept. 13, 2023) (same); *Maeshiro v. Yatsen Holding Ltd.*, No. 22-cv-8165, 2023 WL 4684106, at \*9 (S.D.N.Y. July 21, 2023) (same); *SolarCity*, 2014 WL 3945879, at \*4 (appointing a movant whose corrected certification substantially reduced his loss); *In re Williams Sec. Litig.*, No. 02-cv-72, 2002 WL 32153476, at \*3 (N.D. Okla. July 8, 2002) ("[T]he corrected errors in Mr. Meruelo's certification and loss calculation do not provide a sufficient basis for denying his motion to be appointed lead plaintiff."); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 615 (W.D. Okla. 2009) ("[T]he alleged errors are not significant enough proof that the Barretti Group will not fairly and adequately protect the interests of the QELP Class to rebut the presumption that the Barretti Group is the 'most adequate plaintiff.'"); *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058, 2021 WL 1550454, at \*5 (N.D. Cal. Apr. 20, 2021) (appointing movant were "[t]here is no indication" that errors were "done in bad faith" or "intentionally misleading"); *Banerjee v. Avinger, Inc.*, No. 17-cv-03400, 2017 WL 4552063, at \*3

7

(N.D. Cal. Oct. 11, 2017) (appointing movant that "corrected the error in reply" and where "there is no indication that the error was committed in bad faith"). The same result is warranted here with respect to Davis.

The Friedman-Rich Group's submits five cases in which movants were disqualified, in part, based on errors (*see* FRG Opp. at 4-5), they are outliers relative to the mountain of authority cited above, and they are all factually distinguishable. For example, the Friedman-Rich Group primarily relies on *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409 (E.D. Pa. 2019). *See* FRG Opp. at 4. However, in *Trevena*, the movant's certification did not match his trade confirmation records because "***he*** combined certain trades and averaged the per-share prices." *See Trevena*, 383 F. Supp. 3d at 414 (emphasis added). Here, in contrast, Davis' initial certification matches the records provided by his wealth manager, and Davis did not take it upon himself to alter the information. Moreover, the movant in *Trevena* "misstated the date on which some of the shares of common stock were purchased" but argued the errors were minor because "the actual date was still within the Class Period." *Trevena*, 383 F. Supp. 3d at 414 n.26. Davis did not misstate the dates of his transactions. As such, *Trevena* is inapposite.

The other cases on which the Friedman-Rich Group relies are similarly distinguishable. *See In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) (cited in FRG Opp. at 4) (finding that "the [movants] submitted information in support of their application as lead plaintiff that they knew was inaccurate" and claimed that they "sold none of the Boeing shares they purchased during the class period," when in fact they had "sold some $7.5 million"); *Camp v. Qualcomm Inc.*, No. 18-cv-1208, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (cited in FRG Opp. at 4-5) (movant claimed he purchased shares at prices "not within the daily low or high trading prices" and "used the wrong loss calculation, which when

corrected, reduces his losses by 30%"); *Darwin v. Taylor*, No. 12-cv-01038, 2012 WL 5250400, at *4 (D. Colo. Oct. 23, 2012) (cited in FRG Opp. at 5) (declining to credit movants belated "corrected" certification which listed an additional 900 transactions and increased his losses from $62,146 to $350,131); *see also In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. 07-cv-177, 2007 WL 2683636, at *7 (D.N.J. Sept. 7, 2007) (cited in FRG Opp. at 5) (disqualifying movant where, *inter alia*, his "Certification was not fully signed," he was misinformed by counsel that he had to sign a certification or "risk becoming ineligible to share in any recoveries the class may later obtain," and he "refuse[d] to produce" his account statements). As such, these cases are inapposite, and the Friedman-Rich Group has failed to prove that Davis is inadequate to represent the class.[5]

## IV.    CONCLUSION

Since Davis is the presumptively most adequate plaintiff, and the presumption has not been rebutted, Davis respectfully requests that the Court appoint him as lead plaintiff and approve his selection of Glancy Prongay & Murray LLP as lead counsel and Weisbrod Matteis & Copley PLLC as liaison counsel for the class.

---

[5] The Friedman-Rich Group's request for discovery (*see* FRG Opp. at 5-6) should furthermore be denied because the group has failed to "'demonstrate a reasonable basis' for a finding of inadequacy." *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997). And given the explanation of the transactions provided herein, "it is difficult to envision what actual 'limited' discovery [the Friedman-Rich Group] would seek." *Reimer v. Ambac Fin. Grp., Inc.*, No. 08-cv-1273, 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008).

Respectfully submitted,

DATED: December 11, 2023

**WEISBROD MATTEIS & COPLEY PLLC**

By: */s/ William E. Jacobs*
Stephen A. Weisbrod (#14795)
William E. Jacobs (#21975)
3000 K Street, NW, Suite 275
Washington, DC 20007
Telephone: (202) 499-7900
Email: sweisbrod@wmclaw.com
            wjacobs@wmclaw.com

*Liaison Counsel for Andrew Davis and Proposed
Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (*pro hac vice* to be filed)
Charles H. Linehan (*pro hac vice* to be filed)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

*Counsel for Andrew Davis and Proposed Lead
Counsel for the Class*

10