# Exhibit 1

**STANDSTILL DEED**

This Standstill Deed (this "**Standstill Deed**") is entered into as of November  11 , 2023, by and between Enviva, LP ("**Enviva LP**"), Enviva Pellets Waycross, LLC ("**Enviva Waycross**" and together with Enviva LP, "**Enviva**"), and RWE Supply & Trading GmbH ("**RWEST**").  Each of Enviva and RWEST are referred to herein as a "**Party**" and, collectively, the "**Parties**."  Capitalized terms used herein and not otherwise defined in this Standstill Deed shall have the meanings given to them in the 2010 Master Agreement or the 2011 Master Agreement (each as defined below), as applicable.

WHEREAS, Enviva Waycross and RWEST are party to that certain *Master CIF Contract for Deliveries of Biomass* dated December 22, 2010 (as amended, modified, and supplemented from time to time, the "**2010 Master Agreement**").

WHEREAS, Enviva LP and RWEST are party to that certain *CIF Master Agreement* dated November 30, 2011 (as amended, modified, and supplemented from time to time, the "**2011 Master Agreement**").

WHEREAS, pursuant to the 2010 Master Agreement and the 2011 Master Agreement, the Parties have from time to time entered into certain Confirmations (as defined in the 2010 Master Agreement or the 2011 Master Agreement, as applicable) for the purchase, sale, delivery, and/or acceptance of Product (each such Confirmation, together with the 2010 Master Agreement and the 2011 Master Agreement, the "**Master Agreements**").

WHEREAS, in the last quarter of 2022 the Parties concluded a series of value-creating transactions, including various transactions whereby RWEST would sell Product back to Enviva, namely (a) Confirmation reference number 62579357, dated October 13, 2022, for Enviva's repurchase of 825,000 MT +/- 2% of Product between October 1, 2023 and December 31, 2025; (b) Confirmation reference number 63489992, dated November 22, 2022, for Enviva's repurchase of 306,500 MT +/- 10% of Product between June 1, 2023 and December 31, 2023; (c) Confirmation reference number 63814539, dated December 12, 2022, for Enviva's repurchase of 307,000 MT +/- 10% of Product between April 1, 2023 and July 31, 2023; and (d) Confirmation reference numbers 69753287 and 70250711, dated August 31, 2023 (being the date of RWEST's exercise of a Put Option granted by Enviva (the "**Put Option**") under a Put Option Agreement dated December 23, 2022), for Enviva's repurchase of 320,000 MT +/- 10% of Product between June 1, 2024 and December 31, 2025 (collectively, the "**Repurchases**").

WHEREAS, there are 2,927,900 MT (subject to tolerance) of outstanding Product to be delivered by Enviva to RWEST under the Master Agreements at an average weighted Base Price of $193.11/MT.

WHEREAS, there are 1,729,430 MT (subject to tolerance) of outstanding Product to be delivered by RWEST to Enviva under the Repurchases at an average weighted Base Price of $370.85/MT.

WHEREAS, since the first quarter of 2023 and at the request of Enviva, the Parties have been engaged in ongoing good faith negotiations regarding restructuring of the Parties' respective obligations under the Master Agreements, including with respect to the Repurchases.  To facilitate these negotiations, the Parties, while reserving all rights, entered into a standstill agreement on September 6, 2023, which expired in accordance with its terms on September 30, 2023 ("**September Standstill Agreement**").

WHEREAS, the Parties continue to engage in non-binding negotiations to restructure the Parties' obligations under the Master Agreements, including the Repurchases (the "**Restructuring**").

WHEREAS, RWEST called on Enviva to nominate Vessels for Shipments pursuant to the Master Agreements on 2 October 2023, 4 October 2023, and 6 October 2023 (the "**Nomination Requests**").

WHEREAS, the Parties agree to suspend certain rights and obligations that may arise under the Master Agreements for a specified period of time as set forth herein, and to establish certain milestones and other obligations as set forth herein to facilitate the Parties' continued negotiations in respect of the Restructuring.

NOW THEREFORE, in consideration of the covenants and agreements herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Effective Date**. This Standstill Deed shall become effective and binding upon the Parties on the date each Party has executed and delivered this Standstill Deed (such date, the "**Effective Date**").

2. **Standstill**. Each Party hereby agrees, from the Effective Date through the Standstill Expiration Date (such period, the "**Standstill Period**"), not to (a) exercise any right, power, or remedy related to terminating the Master Agreements, including sending any (i) notices of breaches thereof or (ii) demand for payments related thereto, including any Early Termination Payment (as defined in the Master Agreements); or (b) otherwise pursue any recourse or remedies under the Master Agreements, including the commencement of any dispute resolution proceedings.  As of the Effective Date, each Notice of Material Breach from RWEST to Enviva dated October 31, 2023 is deemed to be withdrawn, without prejudice to any rights of RWEST under the Master Agreements, including with respect to the subject matter of the Notices of Material Breach.

3. **Standstill Expiration Date**.

    **(a)** The "**Standstill Expiration Date**" shall occur on the earlier of:

    i. Five Working Days after the Effective Date, if Enviva has not paid RWEST a settlement payment of $5,000,000 (the "**Settlement Payment**") within such period, which Settlement Payment shall be paid in partial settlement of the accrued liabilities of Enviva LP to RWEST under the 2011 Master Agreement;

    ii. November 15, 2023, if Enviva has not provided to RWEST a non-binding proposal for a Restructuring in accordance with section 5(a) below by such date;

    iii. November 30, 2023, if the Parties have not entered into a binding term sheet in respect of a Restructuring by such date;

    iv. the earlier of the effective date of the implementation of a Restructuring or January 31, 2024;

    v. the date on which Enviva fails to comply with any obligation set out in section 5(a), (b), (e) and (g);

    vi.  the date on which Enviva fails to comply with any obligation set out in section 5(c), (d), (f), (h) and (i) of this Standstill Deed if such failure is not cured within five Working Days following written notice to Enviva of such failure; and

2

    **vii.**  the date on which:

        **1.**  an event or condition occurs that enables or permits (after giving effect to all applicable grace or cure periods) the holder or holders of any indebtedness in an aggregate principal amount in excess of $35,000,000 ("**Material Indebtedness**") or any trustee or agent on its or their behalf to cause any Material Indebtedness to become due, or to require the pre-payment, repurchase, redemption or defeasance thereof, prior to its scheduled maturity;

        **2.**  an involuntary proceeding is commenced or an involuntary petition is filed in a court of competent jurisdiction seeking (i) relief in respect of Enviva or any of its subsidiaries or of a substantial part of their property or assets, under Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") or any other applicable law, (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for Enviva or any of its subsidiaries or for a substantial part of their property, or (iii) the winding-up or liquidation of the Enviva or any of its subsidiaries; or

        **3.**  Enviva or any of its subsidiaries (i) voluntarily commence any proceeding or file any petition seeking relief under the Bankruptcy Code or any other applicable law, (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or the filing of any petition described in paragraph 2 above, (iii) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for Enviva or any of its subsidiaries or for a substantial part of their property or assets, (iv) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors, or (vi) become unable, admit in writing its inability or fail generally to pay its debts as they become due.

**4.**  <u>**Amendment of Master Agreements by Enviva**</u>.

  **(a)** Notwithstanding any notice period, right to remedy a breach, benefit of the effluxion of time or any other term of any Master Agreement, the Parties agree that upon the occurrence of the Standstill Expiration Date, RWEST shall be entitled to serve a notice of termination, which shall be valid if served in accordance with section 7(c) in respect of any Master Agreements (a "**Termination Notice**"). Following the expiration of five Working Days from serving the Termination Notice (such date, the "**Early Termination Date**"), the relevant Master Agreement shall be immediately terminated and the Early Termination Payment shall fall due for payment, in full without counterclaim or set-off, on the tenth Working Day following the Early Termination Date. The amount of the relevant Early Termination Payments shall be:

      **i.**  under the 2010 Master Agreement, $11,079,496, and

      **ii.**  under the 2011 Master Agreement, $343,920,504, provided this amount shall be reduced by the amount of the Settlement Payment when received by RWEST in accordance with 3(a)(3.i).

  **(b)** Other than as amended by this section 4, or subsequently terminated in accordance therewith, each Master Agreement shall continue in full force and effect.

5.  **Enviva Covenants**. Enviva hereby agrees:

**(a)** to provide RWEST with a detailed proposal for the Restructuring by November 15, 2023;

**(b)** during the Standstill Period, to respond in good faith, in writing, to any proposal for the Restructuring made by RWEST within five Working Days after receipt of such proposal;

**(c)** during the Standstill Period, to negotiate in good faith and use commercially reasonable endeavors to cooperate with RWEST to achieve the Restructuring;

**(d)** during the Standstill Period, to make available to RWEST, as soon as reasonably practicable, documentation, reports and information in respect of the business of Enviva's group as RWEST may reasonably request to complete any due diligence in relation to the Restructuring, including cash flow forecasts, current liquidity position across bank accounts holding a balance in excess of $1,000,000 as of the Effective Date, capital expenditure requirements, details of any anticipated need for additional liquidity in the next 12 months, and, subject to third-party confidentiality limitations, updates on material changes in the contracts portfolio of Enviva's group, including any material contract renewals, cancellations, or other re-negotiations;

**(e)** to provide RWEST by November 10, 2023, a report that, to the best of Enviva's knowledge, sets out:

  **i.** a list of all material unencumbered assets (including for the avoidance of doubt, bank accounts holding a balance in excess of $1,000,000 as of the Effective Date) of Enviva's group with individual book value in excess of $1,000,000 (and details of the member of the group which owns each such asset);

  **ii.** an analysis of the Enviva group's remaining capacity for debt incurrence, grant of permitted liens, and incurrence of additional borrowing or debt issuance under its existing debt instruments; and

  **iii.** such further information as RWEST may reasonably request in writing during the Standstill Period;

**(f)** during the Standstill Period, to attend along with its legal representatives and financial advisors weekly meetings with RWEST in which Enviva or its representatives and advisors will report on the status of its restructuring efforts and current developments, including any material updates related to (i) Enviva's efforts to attract new capital or adapt Enviva's corporate structure to facilitate its incurrence such debt and (ii) the status of negotiations with other creditors and stakeholders, including restructuring proposals made or to be made by Enviva to its financing creditors, and transactions to be entered into by Enviva to incur, issue, assume guarantee or otherwise be liable for any new indebtedness the status of negotiations with other creditors and stakeholders;

**(g)** not to incur any additional financial indebtedness and not grant additional security or additional guarantees through November 30, 2023, other than with approval of RWEST (unless such additional financial indebtedness is used to repay Enviva's obligations to RWEST in full) such approval not to be unreasonably withheld;

**(h)** to execute a fee letter for the payment by Enviva of fees, costs and expenses incurred during the Standstill Period (provided that all fees accrued during the Standstill Period shall be payable

4

notwithstanding the occurrence of the Standstill Expiration Date or the termination of this deed) by a financial advisor engaged by RWEST to advise on its exposure to Enviva, in form satisfactory to RWEST and Enviva upon request by RWEST and to comply with its obligations thereunder; and

**(i)** to execute on or before the Effective Date, a fee letter for the payment by Enviva of invoiced fees, costs and out-of-pocket expenses (including any customary retainer) incurred prior to, and during, the Standstill Period (provided that all fees incurred prior to, and during, the Standstill Period shall be payable notwithstanding the occurrence of the Standstill Expiration Date or the termination of this deed) by Skadden, Arps, Slate, Meagher & Flom (UK) LLP as legal advisor to RWEST in form satisfactory to RWEST and Enviva and to comply with its obligations thereunder.

6.  **Termination of FOB Agreement**. The FOB Master Agreement (as defined in the September Standstill Agreement) and the related Confirmations (as defined in the FOB Master Agreement) entered into thereunder (together the "**FOB Agreement**") shall be terminated with immediate effect with no fault, liability or obligation for any Party provided that the rights and obligations in respect of the Reciprocal Confirmations (as defined in the FOB Agreement), including, without limitation, (i) the Confirmation with Reference Number 55785924, dated November 24, 2021, and (ii) the Confirmation with Reference Number 20709166, dated November 9, 2018, both under the 2011 Master Agreement, will continue in full force and effect notwithstanding the termination of the FOB Agreement, regardless of any provision to the contrary in any other document.

7.  **Miscellaneous**.

   (a) **No Waiver**. The execution and entry into this Standstill Deed by the RWEST shall not constitute or be deemed to be a waiver by any RWEST of any rights or remedies under the Master Agreements. RWEST expressly reserves any and all present or future rights or remedies under the Master Agreements (except as modified hereby), at law or in equity.

   (b) **Representations**. Each Party hereto represents and warrants as of the date hereof that (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and has full power to execute, deliver and perform this Standstill Deed, (b) the execution, delivery, and performance of this Standstill Deed have been and remain duly authorized by all necessary corporate actions and do not contravene any provision of law or such Party's constitutional documents or any contractual restriction binding on such Party or its assets or require any third party consents or approvals that have not been duly obtained, and (c) this Standstill Deed constitutes the legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms, except as limited by general principles of equity and bankruptcy, insolvency and similar laws.

   (c) **Notices.** All notices and communications to be made in connection with this Standstill Deed shall be made in writing and shall be sent to the address details set out in the Master Agreements or by email to the addresses below, in which case shall be deemed to have been made or delivered on sending, provided no notice of non-delivery is received:

       a.  if to Enviva, to be sent to:

           Email: jason.paral@envivabiomass.com,

           with a copy to Vinson & Elkins LLP,

5

Email: dmeyer@velaw.com; jpeet@velaw.com; mpyeatt@velaw.com.

b. if to RWEST, to be sent to:

Email: julian.white@rwe.com; nigel.fowkes@rwe.com; jacob.meins@rwe.com; martin.dewolff@rwe.com; henry.pease@rwe.com,

with a copy to Skadden, Arps, Slate, Meagher & Flom (UK) LLP:

Email: peter.newman@skadden.com; edward.taylor@skadden.com; teresa.lotufo@skadden.com.

**(d) Confidentiality**. Each Party agrees that the existence and terms of this Standstill Deed shall constitute Confidential Information for the purposes of the non-disclosure agreement between the Parties dated October 4, 2023.

**(e) Governing Law; Dispute Resolution**. This Standstill Deed shall be governed by and construed in accordance with the laws of England and Wales. The Parties agree that the courts of England and Wales shall have exclusive jurisdiction to settle any contractual or non-contractual dispute arising out of or in connection with this Standstill Deed.

**(f) Construction of Certain Terms and Phrases**. Titles appearing at the beginning of any sections, subsections or other subdivisions of this Standstill Deed are for convenience only, do not constitute any part of such sections, subsections or other subdivisions, and shall be disregarded in construing the language contained therein. The words "this Standstill Deed", "herein", "hereby", "hereunder", "hereof" and words of similar import, refer to this Standstill Deed as a whole and not to any particular subdivision unless expressly so limited. The words "this section", "this subsection" and words of similar import, refer only to the sections or subsections hereof in which such words occur unless otherwise stated herein.  The word "including" (in its various forms) means "including without limitation."  The word "or" when used in a list shall not indicate that the listed items are exclusive of each other.  Pronouns in masculine, feminine or neuter genders shall be construed to state and include any other gender, and words, terms and titles (including terms defined herein) in the singular form shall be construed to include the plural and vice versa, unless the context otherwise expressly requires.  Unless the context otherwise requires, all defined terms contained herein shall include the singular and plural and the conjunctive and disjunctive forms of such defined terms.  References to a Party shall include such Party's successors and permitted assigns.

**(g) Amendment or Modification**. This Standstill Deed may not be amended or modified except by an instrument in writing signed by each Party.

**(h) Severability**. If any term or other provision of this Standstill Deed is invalid, illegal or incapable of being enforced by any rule of applicable law, or public policy, all other conditions and provisions of this Standstill Deed shall nevertheless remain in full force and effect.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Standstill Deed so as to effect the original intent of the Parties as closely as possible.

**(i) No Third Party Rights**. A person who is not a party to the Master Agreements has no right under the Contracts (Rights of Third Parties) Act of 1999 or any other applicable law to enforce any term herein, provided that this shall not affect any right or remedy of a third party which exists or is available apart from that Act.

**(j)** **Counterparts**. This Standstill Deed may be executed and delivered (including by facsimile, by email in pdf format or other electronic transmission) in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Parties, it being understood that all Parties need not sign the same counterpart.

**(k)** **Settlement Purposes**. The contents of this Standstill Deed, drafts hereof, and any communication related hereto are a matter of open record and any Party may admit this Standstill Deed to enforce the terms of this Standstill Deed.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, this Standstill Deed has been executed as a deed and is delivered on the date first set forth above.

**Enviva:**

ENVIVA, LP, a Delaware limited partnership

By ENVIVA GP, LLC,

as its sole general partner



By:
Name:
Title:

By:
Name:
Title:

**Enviva Waycross:**

ENVIVA PELLETS WAYCROSS, LLC, a Delaware limited liability company



By:
Name:
Title:

By:
Name:
Title:

[*Signature Page to Standstill Deed*]

**RWEST:**

RWE SUPPLY & TRADING GMBH, a company incorporated
under the laws of Germany

By:
Name:
Title:

By:
Name:
Title:

*[Signature Page to Standstill Deed]*