# Exhibit A

*Solicitation Version*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENVIVA INC., *et al.*, | ) | Case No. 24–10453 (BFK) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**DISCLOSURE STATEMENT FOR THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ENVIVA INC. AND ITS DEBTOR AFFILIATES**

Paul M. Basta (admitted *pro hac vice*)
Andrew M. Parlen (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3990

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
1021 East Cary Street, Suite 810
Richmond, Virginia 23219-0020
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

*Counsel to the Debtors and Debtors in Possession*

Dated: October 4, 2024

---

[1] Due to the large number of Debtors in these jointly administered Chapter 11 Cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/enviva. The location of the Debtors' corporate headquarters is:  7272 Wisconsin Avenue, Suite 1800, Bethesda, MD 20814.

### K.      Special Committee Investigation

#### 1.      Assessment of Potential Claims

As discussed above, a Special Committee was formed to investigate claims in connection with the Q4 2022 Transactions.[68]  In February 2024, the Special Committee's remit expanded to include a review of (i) transactions with, or payments or transfers of property outside the ordinary course of business, to affiliates and/or insiders (the "Related Party Transactions") in the six years preceding the Petition Date, and (ii) transactions that were the subject of a "material definitive agreement" on a Current Report on Form 8-K or that have otherwise been identified as material by the Special Committee in the six years preceding the Petition Date.[69]  As discussed above, the Special Committee, with the assistance of its counsel, Baker Botts,[70] determined that colorable claims exist arising from the decision to enter into the Q4 2022 Transactions and in connection with certain Related Party Transactions with current and former officers.  The Special Committee's assessment of such transactions included an evaluation of potential claims or causes of action under federal and state law, as applicable, for actual fraudulent transfer, constructive fraudulent transfer, avoidable preference, breach of contract, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, unlawful dividend, unlawful distribution, collection of monies due, aiding and abetting, and veil piercing.

After a seven-month investigation that involved numerous interviews with Enviva officers, employees, and board members, as well as review of a substantial document population, the Special Committee identified three categories of colorable claims:  (a) claims for breach of fiduciary duty against Thomas Meth (former Chief Executive Officer and current President of Enviva Inc.), Shai S. Even (former Chief Financial Officer of Enviva Inc.), William H. Schmidt, Jr. (former General Counsel of Enviva Inc.), Michael A. Johnson (former Chief Accounting Officer of Enviva Inc.), and John K. Keppler (former Chief Executive Officer) arising from nondisclosure of, and failure to seek Board approval for, agreements for the purchase and sale of wood pellets by the Debtors and RWE entered on or about October 13, 2022, November 19, 2022, December 8, 2022, and/or December 21, 2022 (the "RWE Claims");[71] (b) preferential transfer claims under section 547 of the Bankruptcy Code against former officers William H. Schmidt, Jr., Shai S. Even, and John K. Keppler arising from prepetition severance payments (the "Severance

---

[68]   The Special Committee was also initially tasked with reviewing a stock sale by the former Chief Executive Officer, John Keppler, to a fund that was indirectly controlled by Jeffrey Ubben (then a director of Enviva Inc.) in December 2022.

[69]   The Special Committee's review included evaluating dividends and/or distributions paid in the six-year period preceding the Petition Date.

[70]   Per an agreement with the Office of the United States Trustee, the 2019 drop-down transaction (Project Uwharrie), the 2020 drop-down transaction (Project Yellowstone), the 2021 drop-down transaction (Project Glacier), and the 2021 simplification and C-corporation conversion transaction (Project Titan) (collectively, the "Conflicts Committee Transactions") were evaluated by Kutak Rock.  Kutak Rock provided legal advice to the Special Committee regarding the Conflicts Committee Transactions.

[71]   The colorable claim against Mr. Keppler relates only to the first transaction with RWE on or about October 13, 2022.  Mr. Keppler had resigned his roles with the Debtors prior to execution of the later RWE transactions in 2022.  The colorable claims against Mr. Johnson relate to the second, third, and fourth RWE transactions in Q4 of 2022.  The colorable claims against Mr. Meth, Mr. Evan, and Mr. Schmidt relate to all four RWE transactions in Q4 of 2022.

Payment Preference Claims"); and (c) additional preferential transfer claims against certain members of the Debtors' current and former senior management for prepetition retention and incentive payments (the "R&I Payment Preference Claims," and together with the Severance Payment Preference Claims and RWE Claims, the "Colorable Claims"). The Special Committee did not evaluate whether the Colorable Claims are more likely than not to succeed on the merits, the litigation costs and collectability of any judgment, or the damages recoverable for the RWE Claims. Each of these matters was further evaluated by the Plan Evaluation Committee, with the assistance of Paul, Weiss.

### 2.    Plan Evaluation Committee Determination

As reflected in the Plan, the Plan Evaluation Committee determined in its business judgment that the Debtors' and their Estates' release of the R&I Payment Preference Claims pursuant to Article VIII.D of the Plan is appropriate and in the best interests of the Debtors' Estates and stakeholders, including on account of, among other things, potential defenses to such claims, the anticipated cost of litigating such claims, and the potential adverse impact of pursuing such claims to the value of the Reorganized Enviva Inc. Interests distributed under the Plan.

As reflected in the Plan, the Plan Evaluation Committee determined in its business judgment, for the benefit of the Debtors' Estates and Holders of General Unsecured Claims, to exclude the RWE Claims and the Severance Payment Preference Claims (collectively, the "Excluded Claims") from the Claims and Causes of Action released by the Debtors and their Estates pursuant to Article VIII.D of the Plan. The Plan provides that as of the Effective Date, the Excluded Claims will be transferred to the Litigation Trust established for the benefit of holders of Allowed General Unsecured Claims, as described below.

### 3.    Litigation Trust

The Plan provides that, as of the Effective Date, the Debtors shall transfer to the Litigation Trust all of their rights, title, and interest in and to all of the Litigation Trust Assets, including the Excluded Claims, in accordance with the terms set forth in the Plan and the Litigation Trust Agreement. The Litigation Trust will be operated by the Litigation Trustee who will report to a three-member board (the "Litigation Trust Board," and any member of such Litigation Trust Board, a "Litigation Trust Board Member"), comprised of (i) two (2) members appointed by the Majority Consenting 2026 Noteholders and (ii) one (1) member appointed by the Committee, which member shall be mutually agreeable to the RWE Committee; *provided* that the Majority Consenting 2026 Noteholders may, in their sole discretion, elect not to establish a Litigation Trust Board, in which case the Litigation Trustee shall be the sole governor of the Litigation Trust. The Debtors will disclose in advance of the Confirmation Hearing as part of the Plan Supplement, to the extent known at such time, the identity and affiliations of any Person proposed to serve as the Litigation Trustee or a Litigation Trust Board Member.

The Litigation Trust Agreement generally will provide for, among other things: (a) the transfer of the Litigation Trust Assets to the Litigation Trust; (b) governance of the Litigation Trust; (c) the mechanics for funding the payment of expenses of the Litigation Trust, the Litigation Trustee and the Litigation Trust Board; (d) the authority of the Litigation Trustee and the Litigation Trust Board (if any) to prosecute, settle, compromise, abandon, dismiss, or otherwise resolve any Excluded Claims; and (e) the procedures for distributing net proceeds of Excluded Claims, if any, and any other Litigation Trust Assets to the Litigation Trust Beneficiaries, in accordance with the Plan and in the Litigation Trust Agreement.